UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMAS A. VIJIL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 2:16-cv-00604 KJM CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

　　　　Plaintiff, born November 11, 1961, applied on April 18, 2012 for SSI, alleging disability beginning March 22, 2011. Administrative Transcript ("AT") 199. Plaintiff alleged he was unable to work due to the replacement of his left hip and lower back pain. AT 224. Initially, upon reconsideration, and ultimately in a decision by the ALJ dated October 1, 2014, plaintiff

was found not disabled.[1] AT 19-32. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since March 22, 2011, the application date.
>
> 2. The claimant has the following severe impairments: status post total arthroplasty of the left hip, degenerative disc disease of the lumbar spine, obesity, and depression.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

perform light work except that: the claimant can frequently push and/or pull with the left lower extremity; the claimant can never climb ladders, ropes, or scaffolds; the claimant can frequently balance; the claimant can occasionally climb ramps or stairs; and the claimant can occasionally stoop, kneel, crouch, and crawl. Furthermore, the claimant is limited to simple, repetitive tasks.

5. The claimant is unable to perform any past relevant work.

6. As the claimant was born on November 11, 1961, the claimant qualified as a younger individual on the alleged onset date of disability. On November 10, 2011, however, the claimant became an individual approaching advanced age.

7. The claimant has a marginal education, and he is able to communicate in English.

8. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from March 22, 2011 through the date of this decision.

AT 21-32.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly assessed his credibility; (2) the ALJ improperly evaluated medical opinion evidence; (3) the ALJ erred in giving partial weight to the opinion of Ms. Urrutia; and (4) the ALJ posed a hypothetical to vocational expert that did not include all plaintiff's limitations.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Credibility

Plaintiff argues that the ALJ erred in assessing his credibility on the issues of his chronic pain and ability to work. The ALJ cited "diagnostic test results which are not conclusive with respect to the severity of pain," plaintiff asserts, and failed to present "specific, clear, and convincing reasons not to accept the severity of plaintiff's pain symptoms." (ECF No. 13 at 7-9.) Plaintiff also argues that the ALJ's credibility analysis was "grounded in an incorrect determination how the plaintiff's daily activities can be translated into an ability to work for 8 hours per day, 5 days per week, on a regular and consistent basis." (Id. at 9.) Defendant counters that the ALJ properly discounted plaintiff's subjective statements because they conflicted with the objective medical record, and that plaintiff's course of treatment indicated that his symptoms were well-controlled. (ECF No. 14 at 9.)

////

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, in the step four determination of plaintiff's residual functional capacity, the ALJ found that plaintiff's medical impairments could be reasonably expected to cause the alleged

symptoms.

> [H]owever, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. Through evaluating the claimant's allegations . . . , the undersigned finds the claimant's allegations as a whole to be less than fully credible. As for specific allegations, the undersigned finds that the record does not support the claimant's allegations of work-preclusive limitations arising from the claimant's musculoskeletal impairments and associated symptoms.

AT 24.

At the July 3, 2014 hearing on his claims before the ALJ, plaintiff testified that, after years of working as an iron worker, he had his left hip surgically replaced in 2011. AT 45-47. Currently, he testified, "the left hip is fine. Sometimes I feel like little pains . . . but that's not really enough to complain.[2] But what bothers me now is my back." AT 48. Plaintiff testified that his back pain predated the surgery and that he was taking several medications for it. AT 48-49, 51-52. He described the pain as "constant, nonstop"; however, when he took his medication, it was "tolerable." AT 49. He took the medication every eight hours, but after six and a half hours, his legs felt "heavy . . . like I have to sit down, but even sitting down bothers me, so I have to get up and take steps." AT 51. Plaintiff saw the doctor every three months for back pain and received more medication; he was told there was no surgical solution. AT 53-54. Plaintiff was prescribed physical therapy, which helped in the short term. AT 54. Plaintiff testified he could not sit longer than twenty minutes or stand longer than ten minutes. AT 56-57. However, he also testified that he regularly walked to his child's school and back, a round trip of a half-mile. AT 56-57. Plaintiff testified that he was comfortable carrying ten-pound bags of sugar. AT 58. In addition to taking his nine-year-old son to school, in a typical day he would watch television, check the water, take out the trash, check the mail, water the grass, and take naps. AT 60-61.

In step four, the ALJ found that plaintiff's allegations of disabling symptoms and functional limitations "are inconsistent with results through [sic] objective testing." AT 24. She

---

[2] In briefing, plaintiff acknowledges his hip surgery had good results and focuses on his lower back pain. (ECF No. 15.)

6

cited medical evidence that plaintiff's hip surgery was successful and that MRIs of his lower back showed "mild degenerative changes" but "no fractures, no subluxation, no soft tissue swelling, no signal abnormalities, and no nerve root compromise[.]" AT 25, 381-82, 457. In 2011, an evaluating orthopedic surgeon, Dr. Star, noted "tenderness and limited range of motion at the lower spine" but also "a steady gait, intact range of motion at the hips and knees, full motor strength and normal reflexes at the lower extremities, and no discomfort with sitting." AT 24, 367-69. Leg raise tests conducted on plaintiff were negative. AT 368, 425, 455, 599. The ALJ cited several psychological exams finding plaintiff to have normal affect, cognition, and orientation. AT 377, 446, 517, 584.

The ALJ further found that plaintiff's allegations of work-preclusive limitations were inconsistent with his "course of treatment and his associated response." AT 26. While some medications were ineffective in relieving plaintiff's pain, he was prescribed morphine in 2012 and testified at the hearing that it afforded him about 6.5 hours of significant pain control. AT 26. The ALJ also cited records evidencing "appreciable relief from physical therapy sessions." AT 26, 398, 544, 546, 551. For example, progress reports in 2012 noted that plaintiff had "improvements with no major pain or flare-ups since last visit and BP is back to normal." AT 544. "Furthermore," the ALJ noted, "despite the claimant's allegations of disabling lower back pains, at claimant's most recent orthopedic surgical consultation, Dr. Schiff concluded that the claimant had 'very minimal findings in the low back' which would not 'rise to the level of surgical intervention by anybody's criteria.'" AT 26-27, 592.

In light of the medical record and evidence of plaintiff's daily activities, discussed above, the undersigned concludes that the ALJ used the proper process and provided proper reasons in finding plaintiff "not entirely credible" about the limiting effects of his symptoms.

B. Medical Opinions

Plaintiff next claims that the ALJ improperly rejected certain medical opinions of plaintiff's treating physician, Dr. Dennis, and a consultative examiner, Dr. Young.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record;

and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester , 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff asserts that Dr. Dennis, an orthopedic surgeon, was the primary clinical physician treating problems in plaintiff's left hip and lower back. Dr. Dennis performed plaintiff's left hip replacement in March 2011. AT 387. The ALJ largely credited Dr. Dennis's opinions in her step four analysis. See, e.g., AT 25 (in September 2011, Dr. Dennis reported findings "of a normal gait, normal motor strength, symmetric reflexes, and intact sensation, as well as normal range of motion . . . in the left hip"); AT 26 (in March 2011, Dr. Dennis's mental status examination revealed "a normal affect, cooperative behavior, and a normal thought process."); AT 28 (in April 2011, Dr. Dennis concluded that plaintiff "could not perform his 'regular and customary' work[3]. The undersigned gives great weight to this opinion. . . . Furthermore, Dr. Dennis's opinion is consistent with the remainder of the medical evidence, . . . which merits great weight.").

However, the ALJ gave little weight to a portion of Dr. Dennis's October 2011 opinion concerning plaintiff's "lifting and carrying abilities, as the totality of the medical evidence substantiates a finding that the claimant would be restricted to lifting and carrying no more than

---
[3] At the time, plaintiff worked as an ironworker, which the vocational expert testified was heavy work. AT 65.

8

20 lbs[.]" AT 2011. In his October 2011 report, Dr. Dennis opined that plaintiff could occasionally lift up to 40 lbs; frequently lift up to 25 lbs; occasionally bend, squat, and kneel; never climb; and frequently reach above his shoulders, use repetitive hand motions, grasp, push and pull. AT 406-407. The ALJ included some of these limitations in the RFC finding and noted that she gave the majority of Dr. Dennis's October 2011 opinion "great weight." AT 28-29. Insofar as the ALJ determined that plaintiff could carry less weight than Dr. Dennis believed he could carry, and incorporated this lower number into the RFC, any error in rejecting Dr. Dennis's opinion was harmless.

As defendant points out, plaintiff does not "discuss what parts of Dr. Dennis's opinion were not properly evaluated, or articulate[] how the ALJ's alleged error affected the RFC finding." ECF No. 14 at 12. Nor does plaintiff clarify his argument in reply. Based on the foregoing and the overall medical record, plaintiff has not shown any error in the ALJ's consideration and weighing of Dr. Dennis's opinions.

Dr. Young performed a mental status examination of plaintiff in July 2013 as part of his application for benefits. AT 461-464. She found his speech, memory, and thought process to be normal and his demeanor "very pleasant and cooperative." AT 463. Dr. Young concluded that plaintiff would be able to appropriately deal with the public, supervisors, and coworkers and was able to understand instructions; however, he would be "mildly impaired" in performing one- and two-step tasks and would have difficulty performing more complex tasks. AT 464. She opined that plaintiff would be "unable to perform work activities without special or additional supervision" but that he could adapt to the "usual stress encountered in the work setting." AT 464.

In her step four determination, the ALJ summarized Dr. Young's opinion and gave "great weight" to certain portions. AT 29-30. However, she gave little weight to the opinion that plaintiff could not perform work activities without special or additional supervision, rejecting it as "inconsistent with the medical evidence as a whole, which demonstrates that the claimant received no form of sustained treatment for his psychological symptoms and he exhibited largely unremarkable findings on mental status examination." AT 30. Plaintiff points to Dr. Young's

9

findings that plaintiff had a depressive disorder as "not inconsistent" with the finding that he would require special or additional supervision in a work setting. (ECF No. 15 at 6.) However, in light of the record as discussed above, the court concludes that the ALJ did not err in assigning reduced weight to a portion of Dr. Young's opinion.

### C. Lay Testimony

Plaintiff next argues that the ALJ improperly rejected the testimony of plaintiff's girlfriend Mona Urrutia, who completed a third party adult function report about plaintiff in 2013. AT 260-270. Urrutia stated that she and plaintiff had known each other 24 years and lived together, and that plaintiff experienced chronic pain such that he could not walk without his back and leg hurting and could not stand or sit for more than 15 minutes. AT 260. In her step four analysis, the ALJ gave "partial weight" to Ms. Urrutia's report, noting that her allegations "largely mirror those of the claimant, which the undersigned finds that the record does not fully support based on the reasons outlined above at length." AT 27.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. "Where the ALJ has first found a claimant not credible, the ALJ may subsequently reject lay testimony because it essentially reproduces the claimant's testimony." Lee v. Astrue, 2010 WL 5662964, *8 (D. Or. Oct. 27, 2010), citing Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009). As the ALJ stated this as the reason she gave only partial weight to Ms. Urrutia's statement, the court finds no error in the ALJ's finding as to Ms. Urrutia.

### D. Vocational Expert

Finally, plaintiff claims that the ALJ's hypothetical questions to vocational expert Carly Coughlin did not include all of plaintiff's impairments as reflected in the record. See AT 64-70.

Plaintiff does not argue that the hypothetical posed to the VE did not mirror the RFC, but rather argues that the RFC assessment was flawed because, e.g., it did not credit certain opinions of Dr. Dennis and Dr. Young.

"At Step Five . . . , the Commissioner bears the burden of proving that the claimant can perform other jobs that exist in substantial numbers in the national economy. 20 C.F.R. § 416.920(f). There are two ways for the Commissioner to meet this burden: (1) by the testimony of a vocational expert or (2) by reference to the grids." Bruton v. Massanari, 268 F.3d 824, 828 n.1 (9th Cir. 2001) (internal citations omitted). In this case, the Commissioner employed the testimony of a vocational expert. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the ALJ asked the VE whether jobs existed for individuals with plaintiff's residual functional capacity, among other factors, and the VE identified certain "light and unskilled occupations" that met these criteria. AT 31, 65-66. The VE also concluded that, with those limitations, plaintiff could not do his past work as an ironworker. AT 66. Having addressed plaintiff's arguments regarding the RFC assessment, above, the undersigned finds that the hypothetical that ultimately served as the basis for the ALJ's determination was supported by substantial evidence in the record as a whole.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) be denied;

////

11

2. The Commissioner's cross-motion for summary judgment (ECF No. 14) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 15, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 vijil0604.ssi.fr